IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROCK ISLAND AUCTION COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2642-S-BN |
| | § | |
| BOB G. DEAN, JR., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Petitioner Rock Island Auction Company has filed a Petition to Confirm Arbitration Award under 9 U.S.C. § 9 against Defendant Bob G. Dean, Jr. *See* Dkt. No. 1. Rock Island explains that "[t]his is a Petition to confirm an arbitration award" and that it "seeks a writ of attachment as a pre-judgment remedy, a temporary restraining order, and a preliminary injunction against Defendant to prevent Defendant from dissipating assets in order to attempt to escape the final award (the 'Final Award') issued in the American Arbitration Association (the 'AAA')." *Id.* at 1.

Rock Island explains that, "[o]n November 2, 2023, the arbitrator issued the Final Award," in which "the Arbitrator awarded to Rock Island $1,438,447.25 and title and ownership to certain 11 Items," and that "[t]he Petition further seeks permanent relief in the form of a judgment against Defendant in the amount of $1,438,447.25, plus costs, interests, and fees associated with bringing this Petition." *Id.* at 1, 3.

The presiding United States District Judge has referred this matter to the

undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 5.

Rock Island has also filed an Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction. *See* Dkt. No. 3. In the motion, "Rock Island seeks expedited, ex-parte relief because an auction is set to occur on December 11, 2023, where Defendant is expected to sell or dissipate assets that should be used to satisfy a judgment against him." *Id.* at 1. Rock Island explains that it "has learned that Defendant intends to sell at least eighteen (18) antique or high-end firearms and knives [the 'Antiques'] at an auction in Dallas, Texas scheduled for December 11, 2023." Dkt. No. 1 at 4; *see also* Dkt. No. 3 at 2, 9-10 (listing the 18 Antiques).

The relief that Rock Island seeks qualifies as a dispositive matter as to which the undersigned must enter a recommendation under 28 U.S.C. § 636(b). *See* 28 U.S.C. § 636(b)(1)(A); *accord 3 Kids, Inc. v. Am. Jewel, LLC*, No. 3:18-mc-96-S-BH, 2019 WL 462781, at *1 (N.D. Tex. Jan. 15, 2019), *rep. & rec. adopted*, 2019 WL 460325 (N.D. Tex. Feb. 6, 2019).

For the reasons explained below, the Court should deny Rock Island's Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction [Dkt. No. 3].

**Background**

Rock Island explains that it

> prevailed in an arbitration proceeding against Defendant, and was awarded a principal amount of $1,438,447.25 based on Defendant's

> failure to abide by the terms of a Consignment Agreement []. The arbitration award followed a full and fair hearing with Defendant present at the arbitration final hearing and represented by counsel. ….
>
> Very recently, Rock Island has learned that Defendant has plans to sell antique and/or high-end firearms and knives at an auction in Dallas, Texas on December 11, 2023. Defendant has made no attempts to satisfy the judgment against him in arbitration. Instead, Defendant appears to be ready to follow his pattern of dissipating assets and then hiding or absconding with the proceeds.
>
> Rock Island has brought this action to confirm the arbitration award. Prior to or in confirming the award, the Court should issue pre-judgment remedies. Rock Island has a single chance to collect on its judgment against Defendant. Specifically, the Court should issue an order for a writ of attachment for certain items detailed herein.

Dkt. No. 3 at 1, 2.

Rock Island asserts that it "satisfies the requirements for a pre-judgment remedy of a writ of attachment for the Antiques" and that "[t]he Court should issue the order as soon as possible so that Rock Island may serve the writ prior to the December 11, 2023 auction." *Id.* at 13.

And Rock Island requests that, "[a]lternatively, the Court should issue a temporary restraining order and preliminary injunction enjoining Defendant from selling or otherwise dissipating these same assets." *Id.* at 2.

## Legal Standards & Analysis

I.   Subject Matter Jurisdiction

The Court first has an independent duty to examine its own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999).

As part of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9 provides for a proceeding for a federal court to confirm an arbitration award: "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award

made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."

But "for jurisdiction over controversies touching arbitration," the FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008).

Rock Island alleges that "[t]his Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because it involves a dispute between citizens of different states and an amount in controversy greater than $75,000, exclusive of interest and costs." Dkt. No. 1 at 2. Rock Island alleges that it "is an Illinois corporation with its principal place of business in the State of Illinois" and that "Defendant is an individual domiciled in Georgia." *Id.* at 1.

"Under 28 U.S.C. § 1332(a), diversity jurisdiction exists when there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000." *Bynane v. Bank of New York Mellon for CWMBS, Incorporated Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 355 (5th Cir. 2017).

To establish complete diversity, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v.*

*Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (cleaned up). Corporations are citizens "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). And individuals are citizens of the states where they are domiciled, because, "for purposes of federal diversity jurisdiction, 'citizenship' and 'domicile' are synonymous." *Hendry v. Masonite Corp.*, 455 F.2d 955, 955 (5th Cir. 1972).

Here, Rock Island and Dean are completely diverse as citizens of Illinois and Georgia.

And, on a petition to confirm an arbitration award, "the amount in controversy is the amount sought in the underlying arbitration rather than the amount awarded." *Pershing, L.L.C. v. Kiebach*, 819 F.3d 179, 182 (5th Cir. 2016) (cleaned up).

Rock Island's demand stated a "Dollar Amount of Claim" in the amount of $4,343,263, and then it sought damages of $1,438,447.25, and so this requirement is met. *See* Dkt. No. 1-2 at 3 of 5; Dkt. No. 4 at 92.

And, so, Rock Island has established both requirements for diversity jurisdiction under Section 1332(a).

II. <u>Ex Parte Treatment</u>

In its motion for pre-judgment remedies, "Rock Island seeks expedited, ex-parte relief because an auction is set to occur on December 11, 2023, where Defendant is expected to sell or dissipate assets that should be used to satisfy a judgment against him." Dkt. No. 3 at 1.

Rock Island notes that, under Texas Rule of Civil Procedure 592, an application

for the issuance of a writ of attachment may be made ex parte. *See id.* at 11. In support of the application, Rock Island's counsel explains in his supporting declaration that, "[g]iven that the Motion seeks ex-parte relief, I have not attempted to confer with Dean or counsel for Dean" and that the motion "seeks expedited relief because the Heritage Auction is set to occur on December 11, 2023, and Rock Island seeks relief prior to the auction." Dkt. No. 4 at 2.

Rock Island provides no other explanation for seeking ex parte treatment and no analysis of how its request meets any standards for ex parte treatment under Rule 592.

"Ex parte proceedings are an exception to the rule in our judicial system and contrary to its adversarial nature." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 231 (5th Cir. 2008); *accord United States v. Boender*, 719 F. Supp. 2d 951, 960 (N.D. Ill. 2010) (noting "the general unease with ex parte proceedings in the American justice system" and that "the default form of hearing in this country" is "one in which both parties are present"), *aff'd*, 649 F.3d 650 (7th Cir. 2011).

"Nevertheless, there are certain situations in which the Court must exercise its discretion to consider ex parte submissions or hold an ex parte hearing." *United States v. Davita, Inc.*, 301 F.R.D. 676, 686 (N.D. Ga. 2014), *on reconsideration in part*, No. 1:07-CV-2509-CAP-JSA, 2014 WL 11531065 (N.D. Ga. May 21, 2014).

In the absence of an articulated standard for the Court to exercise that discretion under Rule 592, Federal Rule of Civil Procedure 65(b)(1) applies to Rock Island's alternative request for injunctive relief and provides a good proxy standard

for the motion for a writ of attachment.

Under Rule 65(b)(1), "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1).

Rock Island offers facts and evidence in support of its allegations that Dean has in the past hid or disposed of assets and may now seek to do the same. *See* Dkt. Nos. 3 & 4.

But, while explaining why it believes it needs a writ of attachment or injunctive relief in short order, Rock Island does not explain how immediate and irreparable injury, loss, or damage will result to it before Dean could be heard in opposition to the request to prevent the sale at auction of these particular items.

The undersigned finds that Rock Island has not justified its request to proceed ex parte on this expedited motion. And, relatedly, Rock Island did not request that its motion or supporting appendix be filed under seal – or file a motion to support the showing required under governing Fifth Circuit law to seal these materials.

But, in addition to the shortcomings in Rock Island's request for ex parte treatment of its motion on an expedited basis, the Court should deny Rock Island's requests on other grounds as well.

III. Request for Writ of Attachment

Rock Island explains in its motion that it "has brought this action to confirm the arbitration award" but that, "[p]rior to or in confirming the award, the Court should issue pre-judgment remedies" and, specifically, "should issue an order for a writ of attachment for certain items detailed herein." Dkt. No. 3 at 2.

It is helpful to examine the nature of this proceeding when assessing Rock Island's request for a pre-judgment remedy.

If there is an independent jurisdictional basis, the FAA "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St.*, 552 U.S. at 582 (citing 9 U.S.C. §§ 9-11).

The FAA, in 9 U.S.C. § 9, "contemplates that awards made pursuant to arbitration will be confirmed in the federal court." *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 499 (5th Cir. 1986), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). "The confirmation of an arbitration award is a summary proceeding that converts a final arbitration award into a judgment of the court." *Variable Annuity Life Ins. Co. v. Bencor, Inc.*, No. Civ. A. H-05-1843, 2006 WL 1492249, at *2 (S.D. Tex. May 30, 2006).

"Under the terms of [9 U.S.C.] § 9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in [9 U.S.C.] §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one." *Hall St.*, 552 U.S. at 582 (footnote omitted).

And "[a] judgment confirming an arbitration award" operates "like any other civil judgment," *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013), and "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered," 9 U.S.C. § 13; *accord Woods v. P.A.M. Transp. Inc.-L.U.*, 440 F. App'x 265, 269, 270 (5th Cir. 2011) (explaining that 9 U.S.C. § 13 "provides that a judgment enforcing an arbitration award has the same effect as any other district court judgment" and that, "under 9 U.S.C. § 13, a judgment of a federal court confirming, modifying, or correcting an arbitration award has the 'the same force and effect' as, and is 'subject to all the provisions of law relating to, a judgment in an action,' and 'may be enforced as if it had been rendered in an action in the court in which it is entered'" (footnote omitted; quoting 9 U.S.C. § 13)).

"An application for [a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it] will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall St.*, 552 U.S. at 582 (citing 9 U.S.C. § 6; footnote omitted).

Federal Rule of Civil Procedure 81(a)(6) provides that the Federal Rules of Civil Procedure, "to the extent applicable, govern proceedings under [9 U.S.C., relating to arbitration], except as these laws provide other procedures." FED. R. CIV. P. 81(a)(6)(B). But the FAA specifies that "[a]y application to the court hereunder

shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6.

And, so, "[a]rbitration proceedings are summary in nature to effectuate the national policy favoring arbitration." *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987). Courts have "emphasize[d] the limited role a court plays in resolving motions to confirm, or modify, arbitration awards" and explained that "[a]ctions to confirm arbitration awards ... are straightforward proceedings in which no other claims are to be adjudicated." *Lummus Glob. Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*, 256 F. Supp. 2d 594, 635 (S.D. Tex. 2002), *decision modified on denial of reconsideration* (June 14, 2002).

As to Rock Island's request for a pre-judgment writ of attachment, Federal Rule of Civil Procedure 64(a) provides that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64(a). And Federal Rule of Civil Procedure 64(b) explains that "[t]he remedies available under this rule include the following – however designated and regardless of whether state procedure requires an independent action: …. attachment." FED. R. CIV. P. 64(b).

But Rule 64(a) also provides that "a federal statute governs to the extent it applies." FED. R. CIV. P. 64(a). And, here, that would be the FAA.

And, as another judge in this district has explained, proceedings under 9 U.S.C. § 9 to confirm an arbitration award are not generally considered "actions" for

purposes of the Federal Rules of Civil Procedure. *See Alstom Power, Inc. v. S & B Engineers & Constructors, Ltd.*, No. 3:04-cv-2370-L, 2007 WL 1284968, at *2 (N.D. Tex. Apr. 30, 2007).

Under Federal Rule of Civil Procedure 3, "[a] civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3. But, under 9 U.S.C. §§ 6 and 9, "matters heard by the court relating to arbitration are commenced by the filing of an 'application' or 'motion,'" and "matters relating specifically to confirmation or vacatur of an arbitration award are required to be heard by motions." *Alstom*, 2007 WL 1284968, at *2 (citing 9 U.S.C. §§ 6, 9, & 10). And that this matter was "docketed by the district clerk as civil actions is of no moment. Such docketing and designation simply employ a clerical procedure used by a number of districts across the nation. Designation of such arbitration proceedings as 'actions,' rather than motions, is a misnomer, but such an error in nomenclature does not change the substantive nature of the filings. Regardless of their designation, the applicable statute makes it unequivocally clear that matters pertaining to arbitration are *motions*, not *actions*." *Id.*

Rule 81(a)(6) likewise limits the applicability of the Federal Rules of Civil Procedure to the extent that the FAA "provide[s] other procedures." FED. R. CIV. P. 81(a)(6)(B). After an arbitration award has been issued, the FAA "specifically provides a procedure which allows a party to file with the court a motion to vacate or to confirm an arbitration award, and the court proceeds to rule on the motion pursuant to Title 9 and the applicable case authority. Title 9 provides all the

procedure necessary for a court to rule on a motion filed thereunder, and no additional procedures are needed." *Alstom*, 2007 WL 1284968, at *3. And, "if the rules of civil procedure applied, and permitted an answer, a motion for summary judgment, a counterclaim, or other such pleadings in a proceeding to vacate or to confirm an arbitration award, the purpose of avoiding protracted litigation, and costs associated with such litigation, through the arbitration process would be thoroughly frustrated." *Id.* at *4 (footnote omitted).

But, analogously, under limited circumstances, the United States Court of Appeals for the Fifth Circuit has held that a district "court may preserve the status quo pending its resolution of a motion to compel arbitration" and "can grant preliminary relief before deciding whether to compel arbitration." *Janvey v. Alguire*, 647 F.3d 585, 593 (5th Cir. 2011). And the Fifth Circuit has permitted a pre-judgment attachment under Rule 64 in aid of a future arbitration in connection with a motion to compel arbitration. *See Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 907-11 (5th Cir. 2019).

The question then remains whether an application or motion under 9 U.S.C. § 9 to confirm an arbitration award can support, for purposes of Rules 64(a) and 81(a), a request for the pre-judgment remedy of a writ of attachment under Texas law.

The Court can, for the moment, assume that it can, even if the application or motion to confirm is not an "action" for other purposes under the Federal Rules of Civil Procedure.

Even if that is so, as another judge in this district has explained,

> Rule 64 specifically allows for seizures of property to satisfy potential judgments "[a]t the commencement of and throughout an action." FED. R. CIV. P. 64(a). Rule 64 does not govern the enforcement of judgments after they have been obtained, however. Additionally, courts have recognized that under Texas law, writs of attachment are generally only "available prior to judgment."

*3 Kids*, 2019 WL 462781, at *2 (cleaned up).

But, although the Arbitration Award has issued in Rock Island's favor, Rock Island does not yet have a judgment in its favor – that is the point of this proceeding. *See generally Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 67-68 (2d Cir. 2023) ("Confirmation is a mechanism[ ] for enforcing arbitration awards. A party, successful in arbitration, seeks confirmation by a court generally because he fears the losing party will not abide by the award. Confirmation gives the winning party ... a variety of remedies for enforcement. This includes plac[ing] the weight of a court's contempt power behind the award, giving the prevailing party a means of enforcement that an arbitrator would typically lack. An arbitration award, however, need not actually be confirmed by a court to be valid. An unconfirmed award is a contract right that may be used as the basis for a cause of action, and in the majority of cases the parties to an arbitration do not obtain court confirmation." (cleaned up)).

And "Rule 64 authorizes the use of provisional remedies at the commencement and during the course of an action. These remedies provide for seizure of a person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action." 11A FED. PRAC. & PROC. Civ. § 2931 (3d ed.).

Turning then to the merits of Rock Island's request for a pre-judgment writ of attachment,

Rule 64 allows for the seizure of property "to secure satisfaction of the potential judgment" "[a]t the commencement of and throughout an action." FED. R. CIV. P. 64(a). The law of the state in which the federal court sits applies to determine what remedies are available when no federal statute applies. Under Texas law, writs of attachment ... are available prior to judgment. Pre-judgment writs of attachment are considered to be a harsh remedy. The statutes and rules governing this remedy must therefore be strictly followed.

The Texas Civil Practice and Remedies Code provides that a writ of attachment is available to a plaintiff if: "(1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ exist under Section 61.002." TEX. CIV. PRAC. & REM. CODE § 61.001. In this context, debt means an obligation to pay a liquidated sum on an express or implied contract. Section 61.002 lists nine specific grounds for a writ of attachment, but a plaintiff need only satisfy one. Section 61.002 provides that attachment is available if:

> (1) the defendant is not a resident of this state or is a foreign corporation or is acting as such;
> (2) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;
> (3) the defendant is in hiding so that ordinary process of law cannot be served on him;
> (4) the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors;
> (5) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts;
> (6) the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors;
> (7) the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;
> (8) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or
> (9) the defendant owes the plaintiff for property obtained by the defendant under false pretenses.

TEX. CIV. PRAC. & REM. CODE § 61.002.

A plaintiff seeking a writ of attachment must support the application with an affidavit by the plaintiff or the plaintiff's agent or attorney that states the general and specific grounds for issuance and the amount of the demand. The validity of the writ does not depend on the truthfulness of the allegations of the affidavit or petition but on

compliance with the statute in making the affidavit.

*3 Kids*, 2019 WL 462781, at *1-*2 (cleaned up).

Rock Island asserts that it meets all of these requirements:

> Here, Rock Island has a judgment in the amount of $1,438,447.25. (Ex. 11, Hogan Decl. at ¶ 19; Ex. 12, Final Award.) As such, Rock Island satisfies the prerequisite of Tex. Civ. Prac. & Rem. Code § 61.001(1) that Defendant is unjustly indebted to Plaintiff. Next, Rock Island does not seek the writ of attachment of the Antique Items for the purpose of injuring or harassing Defendant. (Ex. 11, Hogan Decl. at ¶ 20.) Rather, Rock Island is only attempting to satisfy the judgment it has against Defendant. (*See id.*) As such, Rock Island satisfies the perquisite of § 61.001(2). Next, due to Defendant's numerous, serious, and significant financial woes, there is a high probability that Rock Island will lose its debt unless the Court issues the writ of attachment. (*See* Exs. 2–13.)
>
> Finally, Rock Island must meet only one of the specific grounds enumerated in § 61.002(4). Rock Island meets several. First, Defendant is a Georgia resident, not a Texas resident, (*see* Exs. 2 & 5–8.), therefore Rock Island satisfies § 61.002(1). Second, Defendant intends to leave Texas permanently for either Georgia, New Mexico, Oregon or Wyoming. (*See* Exs. 5–8.) Meanwhile, he has refused to pay the debt, (Ex. 13, Hogan Decl. at ¶ 13-14), thus Rock Island can satisfy § 61.002(2).
>
> Third, Defendant has attempted to hide numerous assets from a multiple of creditors, including Rock Island. Instead of using the Antiques to satisfy the judgment in the Final Award, Defendant intends to sell the items and abscond with the proceeds. As such, Rock Island can satisfy § 61.002(4). Fourth, the entire purpose of the auction is to dispose of the Antiques, and the purpose is to defraud Rock Island, therefore meeting the requirements of § 61.002(7). Finally, via the auction, Defendant will convert all or part of his property (the Antiques) to money. (Hogan Decl. at ¶ 21.) The entire purpose of selling the Antiques is to put the items (and the resulting proceeds) beyond the reach of Rock Island, and therefore Rock Island can satisfy § 61.002(8).

Dkt. No. 3 at 12-13.

But, even if all of that is correct, Rock Island has failed to make the showing for another requirement for a writ of attachment: Rock Island has explained that Dean seeks to sell the specified antique and/or high-end firearms and knives at an

auction in Dallas, Texas on December 11, 2023, but Rock Island has not established that these items are in this Court's jurisdiction.

As another judge in this circuit recently explained,

> [t]he court in [*GM Gold & Diamonds, LP v. Fabrege Co.*, 489 F. Supp. 2d 725 (S.D. Tex. 2007),] considered an application for a writ of attachment under Texas Civil Practice and Remedies Code § 61.001. The court held that "[a]ttachment orders are essentially actions in rem, as they result in actual or constructive control over the res itself, rather than simply adjudicating personal rights to the subject property." *GM Gold & Diamonds*, 489 F. Supp. 2d at 727. The court concluded, therefore, that an attachment order could reach only as far as the reach of the court's in rem jurisdiction, which, traditionally does not extend beyond the state's borders. *Id.* (collecting cases). Because the property that the plaintiff sought to attach was outside of Texas, the court in *GM Gold & Diamonds* concluded that it lacked authority to issue the writ. *Id.* at 729. The court in *Carmack v. Park Cities Healthcare, LLC*, No. 3:16-CV-3500-D, 2021 WL 4133494, *7 (N.D. Tex. Sept. 10, 2021), followed the reasoning of *GM Gold & Diamonds* and concluded that it did not have authority to issue a writ of execution under Texas law for property located outside the state of Texas.

*ZRS7, LLC v. Tailwind Air, LLC*, No. CV H-23-491, 2023 WL 2598849, at *1 (S.D. Tex. Mar. 22, 2023).

Like the court in *ZR37*, the undersigned "concludes that the reasoning of *GM Gold & Diamonds* and *Carmack* applies with equal force here," where Rock Island seeks to have the Court issue a writ of possession over property that Rock Island has not alleged to be located in Texas at this time. *Id.* at *2.

And, so, the Court should deny Rock Island's Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment.

    IV.    <u>Request for Temporary Restraining Order and Preliminary Injunction</u>

"Alternatively, Rock Island seeks a temporary restraining order and

preliminary injunction against Defendant that [] enjoins Defendant from selling the Antiques or otherwise attempting to dissipate these assets in the State of Texas." Dkt. No. 3 at 13; *see also id.* at 18 (requesting, "[i]n the alternative, a temporary restraining order and preliminary injunction enjoining Defendant from selling or transferring the Antiques at the December 11, 2023 or otherwise").

But Rock Island does not claim a specific or equitable interest in the Antiques, and these items are not the subject of this proceeding.

Rather, Rock Island asserts that "Defendant is either insolvent or dissipating assets, or both. Instead of fulfilling the judgment against him in the Arbitration via the Final Award, Defendant has made plans to sell the Antiques at an auction on December 11, 2023." Dkt. No. 3 at 16.

According to Rock Island, "[i]f Defendant is permitted to sell the Antiques, then there is a twofold negative effect on Rock Island":

- "First, Defendant will attempt to hide or spend the proceeds on anything other fulfilling the judgment against him. …. If Dean is not enjoined, then the Antiques will be sold and Dean has no other known assets to satisfy the judgment"

- "Second, if the Antiques are sold, then the purchasers could potentially have a bona fide purchaser defense. In this scenario, Rock Island would not later be able to retrieve possession of the Antiques."

*Id.*

Rock Island contends that, "[o]ther than a writ of attachment, enjoining

Defendant prior to the auction is the only possible way to remedy the harm to Rock Island because Rock Island is not aware of any other assets of Defendant to satisfy the judgment and Defendant is actively hiding assets from his numerous creditors." *Id.*

But the Fifth Circuit has explained that "[t]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir. 1988).

While Rock Island's owner's declaration explains that "Rock Island previously sold the majority of the [Antiques] to Dean and can confirm by serial number," Dkt. No. 4 at 5, Rock Island does not allege that the 18 Antiques are among the 11 items to which it was granted title and ownership in the arbitration award, "the value thereof having already been subtracted from the above damages awarded to" Rock Island, Dkt. No. 1-2 at 4 of 5. And Rock Island seeks to confirm an arbitration award of a liquidated amount of damages, which it will seek to enforce as a judgment if confirmed.

And so Rock Island's requested alternative relief does not qualify as "an injunction … to protect assets that are the subject of the dispute or to enjoin conduct that might be enjoined under a final order" or "to preserve the particular assets in dispute in [an] action[] that [is] essentially in rem." *Fredeman*, 843 F.2d at 827.

And the Fifth Circuit has more recently explained that, in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the United States

Supreme Court held that, "'in an action for money damages, a United States District Court [does not have] the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed.'" *Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012) (quoting *Grupo*, 537 at 333).

For these reasons, the Court should also deny Rock Island's ex parte, alternative request for a temporary restraining order and preliminary injunction.

## Recommendation

The Court should deny Petitioner Rock Island Auction Company's Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction [Dkt. No. 3].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: December 6, 2023

                                              DAVID L. HORAN
                                              UNITED STATES MAGISTRATE JUDGE