IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROCK ISLAND AUCTION COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2642-S-BN |
| | § | |
| BOB G. DEAN, JR. AND HERITAGE, AUCTIONS, INC., | § | |
| | § | |
| | § | |
| Defendants. | § | |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

## Background

On November 30, 2023, Petitioner Rock Island Auction Company filed a Petition to Confirm Arbitration Award under 9 U.S.C. § 9 against Defendant Bob G. Dean, Jr. *See* Dkt. No. 1.

Rock Island explains that "[t]his is a Petition to confirm an arbitration award" and that it "seeks a writ of attachment as a pre-judgment remedy, a temporary restraining order, and a preliminary injunction against Defendant to prevent Defendant from dissipating assets in order to attempt to escape the final award (the 'Final Award') issued in the American Arbitration Association (the 'AAA')." *Id.* at 1. Rock Island explained that, "[o]n November 2, 2023, the arbitrator issued the Final Award," in which "the Arbitrator awarded to Rock Island $1,438,447.25 and title and ownership to certain 11 Items," and that "[t]he Petition further seeks permanent relief in the form of a judgment against Defendant in the amount of $1,438,447.25, plus costs, interests, and fees associated with bringing this Petition." *Id.* at 1, 3.

The presiding United States District Judge has referred this matter to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 5.

Rock Island also, on December 1, 2023, filed an Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction. *See* Dkt. No. 3. In the motion, "Rock Island seeks expedited, ex-parte relief because an auction is set to occur on December 11, 2023, where Defendant is expected to sell or dissipate assets that should be used to satisfy a judgment against him." *Id.* at 1. Rock Island explains that it "has learned that Defendant intends to sell at least eighteen (18) antique or high-end firearms and knives [the 'Antiques'] at an auction in Dallas, Texas scheduled for December 11, 2023." Dkt. No. 1 at 4; *see also* Dkt. No. 3 at 2, 9-10 (listing the 18 Antiques).

The relief that Rock Island seeks qualifies as a dispositive matter as to which the undersigned must enter a recommendation under 28 U.S.C. § 636(b). *See* 28 U.S.C. § 636(b)(1)(A); *accord 3 Kids, Inc. v. Am. Jewel, LLC*, No. 3:18-mc-96-S-BH, 2019 WL 462781, at *1 (N.D. Tex. Jan. 15, 2019), *rep. & rec. adopted*, 2019 WL 460325 (N.D. Tex. Feb. 6, 2019).

And, on December 6, 2023, the undersigned entered Findings, Conclusions, and Recommendation of the United States Magistrate Judge and recommended that the Court should deny Rock Island's Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction [Dkt. No. 3].

Rock Island then, on December 8, 2023, filed an Amended Complaint and Petition to Confirm Arbitration Award against Dean and also against Heritage Auctions, Inc., seeking relief under 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA") and the Texas Uniform Fraudulent Transfer Act. *See* Dkt. No. 9.

And, on December 11, 2023, Rock Island filed a renewed Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction under seal. *See* Dkt. No. 11.

In the motion, Rock Island again "seeks expedited, ex-parte relief because an auction is set to occur with Heritage on December 11, 2023, where Dean is expected to sell or dissipate his final assets that should be used to satisfy a judgment against him." *Id.* at 1. Rock Island explains that it

> has brought this action to confirm the arbitration award against Dean and to seek relief against Defendants for fraudulent transfer in violation of the Texas Uniform Fraudulent Transfers Act. Prior to or in confirming the award or granting the requested relief, the Court should issue pre-judgment remedies. Rock Island has a single chance to collect on its judgment against Dean. Specifically, the Court should issue an order for a writ of attachment for certain items detailed herein and the proceeds collected from a potential auction, both of which are physically present in the State of Texas.

*Id.* at 2.

And Rock Island explains that it

> prevailed in an arbitration proceeding against Dean, and was awarded a principal amount of $1,438,447.25 based on Dean's failure to abide by the terms of a Consignment Agreement []. The arbitration award followed a full and fair hearing with Dean present at the arbitration final hearing and represented by counsel. ….
> Very recently, Rock Island has learned that Dean has plans to sell

>antique and/or high-end firearms and knives at an auction in Dallas, Texas on December 11, 2023 through the auction services of Heritage. Dean has made no attempts to satisfy the judgment against him in arbitration. Instead, Dean appears to be ready to follow his pattern of dissipating assets and then hiding or absconding with the proceeds.

*Id.* at 1, 2.

Rock Island asserts that it "satisfies the requirements for a pre-judgment remedy of a writ of attachment for the Antiques and/or the funds from Heritage in the event the Antiques are sold" and that "[t]he Court should issue the order as soon as possible so that Rock Island may serve the writ prior to the December 11, 2023 auction." *Id.* at 16 (footnote omitted).

Rock Island also explains that, "[i]f any of the Antiques are sold at the December 11, 2023 auction, upon information and belief, the proceeds from any such sale would be placed in a Texas branch of a financial institution or a financial institution with an office or branch in Texas. Further, upon information and belief, Heritage Auctions would retain possession of any proceeds from sale of the Antiques for up to forty-five (45) days before transferring the proceeds to Dean." *Id.* at 16 n.4.

And so, Rock Island contends, its "request will not be moot in the event the auction takes place" because, "[t]ypically, after an auction, Heritage will retain any and all funds from the sale of any Antiques for up to forty-five (45) days following a successful auction bid," and, "[a]ccordingly, the requested relief would be available were this Court not to rule on Rock Island's Motion prior to the December 11, 2023 auction." *Id.* at 21 n.6.

Rock Island requests that, "[a]lternatively, the Court should issue a temporary

restraining order and preliminary injunction enjoining Dean from selling or otherwise dissipating these same assets and/or attempting to remove the assets out of the State of Texas. Additionally, this Court should issue a temporary restraining order and preliminary injunction enjoining Heritage from releasing any of the funds collected in the sale of Dean's property at auction or transferring back to Dean any assets that are not sold at the December 11, 2023 auction." *Id.* at 2.

## Legal Standards and Analysis

The Court should deny, without prejudice, the renewed Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction [Dkt. No. 11] because Rock Island has not established that the motion should be brought on an ex parte basis.

In its motion remedies, "Rock Island seeks expedited, ex-parte relief because an auction is set to occur with Heritage on December 11, 2023, where Dean is expected to sell or dissipate his final assets that should be used to satisfy a judgment against him." Dkt. No. 11 at 1. Rock Island notes that, under Texas Rule of Civil Procedure 592, an application for the issuance of a writ of attachment may be made ex parte. *See id.* at 10.

Rock Island acknowledges that "[e]x parte proceedings are an exception to the rule in our judicial system and contrary to its adversarial nature.'" *Id.* at 10-11 (quoting *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 231 (5th Cir. 2008)) and citing *United States v. Boender*, 719 F. Supp. 2d 951, 960 (N.D. Ill. 2010) (noting "the general unease with ex parte proceedings in the American justice

system" and that "the default form of hearing in this country" is "one in which both parties are present"), *aff'd*, 649 F.3d 650 (7th Cir. 2011)).

But, Rock Island contends,

> "[n]evertheless, there are certain situations in which the Court must exercise its discretion to consider ex parte submissions or hold an ex parte hearing." *United States v. Davita, Inc.*, 301 F.R.D. 676, 686 (N.D. Ga. 2014), *on reconsideration in part*, No. 1:07-CV-2509-CAP-JSA, 2014 WL 11531065 (N.D. Ga. May 21, 2014).
> 
>   Serving as an articulated standard for the Court to exercise discretion under Rule 592, Federal Rule of Civil Procedure 65(b)(1) states "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1) (emphasis added).
> 
>   While efforts are underway to serve both Dean and Heritage, it is undisputed from the facts above, through sworn declarations, that Rock Island will suffer immediate and irreparable injury, loss or damage if the Court must wait to hear from them before acting to prevent the transfer of assets. First, as part of a class action lawsuit in Louisiana state court, Dean has stated that he is now insolvent and has no assets. (App. 54-55.) Further, Dean is reportedly at least $40 million in debt. (App. 58.) Second, Dean has recently served jail time for contempt of court in Georgia for hiding assets from creditors – precisely the thing he is attempting to do again in a matter of days. (App. 2, Burke Decl. at ¶ 13.) Third, there is an abundance of evidence that Dean has converted all of the money in his business accounts (approximately $1 million) into his personal banking accounts immediately following Hurricane Ida to hide his assets from federal authorities. (App. At 29, Federal Complaint ¶¶ 97–100.)
> 
>   Rock Island seeks this ex parte relief because Dean's behavior in the past shows that Dean can, and will, hide, transfer, or dissipate his remaining assets. The sworn declarations clearly establish that notice to Dean must not be a prerequisite to Court intervention under these circumstances.

Dkt. No. 11 at 11-12 (cleaned up). And Rock Island contends that

> [a]ny proceeds or Antiques seized ex parte as part of a writ of attachment would remain with the Court or with a local law enforcement body, such as a sheriff, pending resolution of this action. Rock Island would not immediately take possession of any of the Antiques or proceeds. Indeed, the entire purpose of seeking the writ of attachment and injunctive relief is to preserve the status quo so that Dean does not abscond with his only known assets, as previously attempted with essentially all other creditors. As such, Rock Island notes that there can be no due process concerns because a neutral party – the court or law enforcement body – would hold the seized items pending a substantive resolution of this lawsuit. The very nature of the ex parte relief is only to prevent a known insolvent fraudster to continue perpetuating more fraud on creditors.

Dkt. No. 11 at 12 n.3.

In a supporting declaration, Rock Island's attorney attests:

> 4. The First Amended Complaint in the case United States of America v. Bob Dean Jr. et al., Case No. 23-19, pending in the Middle District of Louisiana (the "Federal Case") is attached in the Appendix at pages 7–42.
> 5. The Docket for the Federal Case is attached in the Appendix at pages 43–50.
> 6. In addition to the Federal Case, the former residents of Defendant Bob Dean's ("Dean") nursing homes brought a class action against Dean in Louisiana state court.
> 7. Dean has agreed to a large settlement with the class, though it appears that insurance is making payment and not Dean personally.
> ….
> 15. Given that the Motion seeks ex-parte relief, I have not attempted to confer with Dean or counsel for Dean. As explained more fully in the Motion, this Motion seeks ex-parte relief because of Dean's previous attempts to defraud creditors.
> 16. Upon information and belief, Dean intends to sell antique and high-end firearms and knives at an auction to be conducted by Heritage Auctions on December 11, 2023 titled "2023 December 11 Arms & Armor, Civil War & Militaria Signature Auction #6279." *See* Appendix 2 https://historical.ha.com/c/auction-home.zx?saleNo=6279. A true and correct screen shot of Heritage Auctions shows as follows….
> 17. Based on the fact that Dean's items are listed on the Heritage Auctions website, upon information and belief, Dean's items are currently in the possession of Heritage Auctions in Dallas, Texas.

Dkt. No. 12 at 1-3 of 124.

And the President and Owner of Rock Island, in his declaration, attests:

    13. Following the Final Award, neither Dean nor his attorneys have contacted Rock Island to attempt to satisfy the judgment in the Final Award.

    14. Even though Dean has failed to satisfy the judgment, I have become aware that Dean intends to sell antique and high-end firearms and knives at an auction to be conducted by Heritage Auctions on December 11, 2023 titled "2023 December 11 Arms & Armor, Civil War & Militaria Signature Auction #6279."

    15. Specifically, Rock Island has learned that Dean will attempt to sell the following items: ….

    16. Rock Island knows these items belong to Dean for a variety of reasons. Rock Island previously sold the majority of the items to Dean and can confirm by serial number.

    17. For the remainder of the items not previously sold by Rock Island to Dean, Rock Island can confirm these items belong to Dean based on close relationships with other dealers.

    18. Additionally, in previous auctions, Dean uses the Provenance name, "Collection of a Southern Gentlemen." At the forthcoming auction by Heritage Auctions, these items are listed under the same Provenance name of "Collection of a Southern Gentlemen".

    19. Based on my experience in the auction industry, these items are currently believed to be in possession of Heritage Auctions located in Dallas, Texas in preparation for the upcoming December 11, 2023 auction.

    20. Based on my experience in the auction industry, if any of the above-identified items are sold at the Heritage Auctions auction in Dallas, those proceeds will remain in a Heritage owned and controlled account for up to forty-five (45) days prior to being remitted to Dean.

    21. Based on my experience in the auction industry, if any of the above-identified items are not sold at the Heritage Auctions auction in Dallas, those items would not be immediately returned to Dean. Those unsold items would remain under the control of Heritage and within the State of Texas for up to forty-five (45) days.

    22. Dean is justly indebted to Rock Island in the amount of $1,438,447.25 as principal, plus interests and fees and costs for being forced to bring the Petition to Confirm Arbitration Award and Motion.

    23. The writ of attachment, as well as the injunctive relief, are not sought for the purpose of inuring or harassing Dean. Rather, Rock Island is attempting only to satisfy the judgment.

    24. Rock Island's understanding is that Dean intends to convert as much as the above-identified property as possible to cash at the auction.

Dkt. No. 12 at 6-8 of 124.

As the undersigned previously concluded, in the absence of an articulated standard for the Court to exercise that discretion under Rule 592, Federal Rule of Civil Procedure 65(b)(1) applies to Rock Island's alternative request for injunctive relief and provides a good proxy standard for the motion for a writ of attachment.

Under Rule 65(b)(1), "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1).

Rock Island again offers facts and evidence in support of its allegations that Dean has in the past hid or disposed of assets. And Rock Island expresses concerns that Dean may now seek to do the same.

But, while again explaining why it believes it needs a writ of attachment or injunctive relief in short order, Rock Island does not explain how immediate and irreparable injury, loss, or damage will result to Rock Island before Dean and Heritage Auctions, Inc. (as to which Rock Island alternatively seeks injunctive relief) could be heard in opposition to the request for a pre-judgment writ of attachment as to the items in, or proceeds from the sale of some or all of those items, the December 11, 2023 auction and as to the alternative request for injunctive relief.

Rock Island explains that it "seeks this ex parte relief because Dean's behavior in the past shows that Dean can, and will, hide, transfer, or dissipate his remaining assets." Dkt. No. 11 at 12 (footnote omitted). And Rock Island points to evidence that Dean reportedly is insolvent and has no assets and is in debt for millions of dollars and has in the past hidden asset from creditors. *See* Dkt. No. 11 at 11-12.

But Rock Island also explains that the assets for which Rock Island seeks a writ of attachment (1) will, as to any proceeds from Dean's items sold at the December 11, 2023 Heritage Auctions auction, remain in a Heritage-owned and -controlled account for up to forty-five (45) days prior to being remitted to Dean and (2) will, to any items that were not sold at the December 11, 2023 Heritage Auctions auction, not be immediately returned to Dean but rather remain under the control of Heritage and within the State of Texas for up to forty-five (45) days.

And Rock Island's assurances that an ex parte writ of attachment presents no due process concerns does not fully address the interest that Dean has in losing control and possession over his assets, regardless of whether they would be turned over immediately to Rock Island.

The undersigned finds that Rock Island has not justified its request to proceed ex parte on this expedited motion, which should be denied without prejudice to Rock Island refiling the motion and serving it on Defendants Bob G. Dean, Jr. and Heritage Auctions, Inc., after which, if appropriate, the Court can order expedited briefing and consideration to address any timing concerns that Rock Island presents.

And, relatedly, Rock Island filed this renewed motion and supporting appendix

under seal but did not request that its motion or supporting appendix be filed under seal – or file a motion to support the showing required under governing Fifth Circuit law to seal these materials. *See* Dkt. No. 6 (Standing Order on Filing Materials Under Seal). The Court should order the filings at Dkt. Nos. 11 and 12 to be unsealed unless Rock Island files an appropriate motion to support their sealing

## Recommendation

The Court should deny, without prejudice, Petitioner Rock Island Auction Company's Ex-Parte Motion on Expedited Basis for Order for Pre-Judgment Writ of Attachment or, Alternatively, Temporary Restraining Order and Preliminary Injunction [Dkt. No. 11] and order that this motion and the supporting appendix [Dkt. No. 12] be unsealed within 7 days unless Rock Island files an appropriate motion to support their continued sealing.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 14, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE